The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JACOB ATKINSON,

     Plaintiff,

v.

AARON'S LLC, *et al.*,

     Defendants.

NO. 23-cv-1742-BJR

**ORDER GRANTING MOTION TO DISMISS**

## I.     INTRODUCTION

The Equal Pay and Opportunities Act ("EPOA"), RCW 49.58, promotes pay equity in Washington State by addressing business practices that contribute to income disparities. On January 1, 2023, a revised provision took effect, which requires certain employers to disclose the wage scale or salary range, and a general description of other compensation and benefits, in each posting for an available position. RCW 49.58.110.  Employees and job applicants are entitled to remedies for violations of this provision, which may include statutory damages. *Id.* Within a few months, multiple plaintiffs, represented by Emery Reddy, PLLC, filed multiple putative class-action lawsuits against various companies who had job postings that are alleged to be non-compliant with the EPOA job-posting provision. This case is one of 27 lawsuits with virtually identical complaints filed in King County Superior Court and subsequently removed to this Court by the defendants.

ORDER GRANTING MOTION TO DISMISS

- 1

This case was removed to this Court on November 13, 2023, and Defendant, Aaron's, LLC DBA Aaron's Sales & Lease Ownership, LLC ("Aaron's"), filed a motion to dismiss. Mot., ECF No. 24. Having reviewed the materials[1] and the relevant legal authorities, the Court will grant Aaron's motion and dismiss Mr. Atkinson's complaint with leave to amend. The reasoning for the Court's decision follows.

## II.     BACKGROUND

### A.  Statutory Background

Washington State passed its first equal pay legislation, the Equal Pay Act, in 1943, and amended it for the first time in 2018, at which time it became known as the Equal Pay and Opportunities Act ("EPOA"). *See* RCW 49.12.175; 49.58.005. The Washington Legislature found that "despite existing equal pay laws, there continue[d] to be a gap in wages and advancement opportunities among workers in Washington, especially women." RCW 49.58.005. The law was updated "to address income disparities, employer discrimination, and retaliation practices, and to reflect the equal status of all workers in Washington state." *Id.*

In 2019, the law was further updated to address discriminatory hiring practices by prohibiting employers "from seeking the wage or salary history of an applicant for employment in certain circumstances," and by requiring "an employer to provide wage and salary information to applicants and employees" upon request, although only "after offering the applicant the position." *Id.*; RCW 49.58.100-110. The 2019 amendments permitted "[a]n individual" to pursue relief for wage disclosure violations. *Id.*  Remedies included "actual damages; statutory damages equal to the

---

[1] Including the motion, ECF No. 24; response in opposition, ECF No. 29; and reply, ECF No. 32; together with multiple exhibits as well as related motions and responses.

ORDER GRANTING MOTION TO DISMISS

- 2

actual damages or five thousand dollars, whichever is greater;" as well as costs and reasonable attorneys' fees. RCW 49.58.060-070.

In 2022, the Washington Legislature enacted the most recent amendment, which modified RCW 49.58.110 to require employers to proactively disclose compensation information when a position is posted as available. This "allows a discussion at the start of the process instead of after an offer has been made, which will increase the ability to negotiate pay." Compl. ¶ 3, ECF No. 1-1 (quoting H.B. Rep. ESSB 5761, at 2). The 2022 amendment also replaced the term "individual" in the relief section, specifying that an applicant or employee is entitled to remedies. RCW 49.58.110 (4); H.B. Rep. ESSB 5761, at 2.

The provision became effective January 1, 2023, and reads as follows:

(1) The employer must disclose in each posting for each job opening the wage scale or salary range, and a general description of all of the benefits and other compensation to be offered to the hired applicant. For the purposes of this section, "posting" means any solicitation intended to recruit job applicants for a specific available position, including recruitment done directly by an employer or indirectly through a third party, and includes any postings done electronically, or with a printed hard copy, that includes qualifications for desired applicants.

(2) Upon request of an employee offered an internal transfer to a new position or promotion, the employer must provide the wage scale or salary range for the employee's new position.

(3) This section only applies to employers with 15 or more employees.

(4) A job applicant or an employee is entitled to the remedies in RCW 49.58.060 and 49.58.070 for violations of this section. Recovery of any wages and interest must be calculated from the first date wages were owed to the employee.

RCW 49.58.110. Although the EPOA defines "employee" and "employer," and the provision defines "posting" and limits application to employers with 15 or more employees, there is no

ORDER GRANTING MOTION TO DISMISS

definition of "job applicant." *See* RCW 49.58.010; 49.58.110. The Washington State Department of Labor and Industries ("Department" or "L&I") is the state agency charged with implementing the EPOA and provides guidance regarding the interpretation and application of the EPOA. *See* RCW 49.58.010, 49.58.090. In response to questions employers raised while attempting to comply with the new EPOA requirements, the Department issued Administrative Policy ES.E.1[2] in late 2022 to provide information for employers on how to comply with the pay transparency requirements. It also issued an online publication to assist with filing a L&I EPOA complaint, and an Employer's Guide to the EPOA. Exs. B, C, ECF Nos. 25-2, 25-3. The L&I complaint form includes, in its covering instructions: "Important: A person is only considered an 'applicant' for the specific posting they applied for, not for every available job of the employer. L&I will investigate complaints filed by applicants who have applied to a job in good faith with the intent of gaining employment." Complaint Form, Ex. B.

In January 2024, House Bill 2349 was introduced to the Legislature, proposing to include the definition of "job applicant" as "a person who has made and submitted a bona fide application for employment for a position listed by an employer covered by this section." House Bill 2349, Decl. Ex. 1, ECF No. 32.[3] It also proposed the addition of a safe harbor provision for employers, giving them 10 days to correct the posting after written notice of non-compliance. *Id.* The bill did not advance past nomination. However, in the same legislative session, substitute House Bill 1905

---

[2] Available at https://www.lni.wa.gov/workers-rights/_docs/ese1.pdf (last accessed Apr. 11, 2024).

[3] The Court grants Plaintiff's request that the Court take judicial notice of House Bill 2349 and Substitute House Bill 1905.  ECF No. 35. Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public record." *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Illinois*, 983 F.3d 435, 439 (9th Cir. 2020).  Defendant does not dispute the content of the document, although it does argue that it is not relevant to the analysis the Court must undertake herein. ECF No. 36. The Court found it unnecessary to refer to these documents in its analysis and includes them here simply as part of the statutory background.

ORDER GRANTING MOTION TO DISMISS

- 4

passed, which amends the EPOA to include additional protected classes, but does not include any changes to RCW 49.58.110. It is slated to take effect July 1, 2025.

### B. Factual and Procedural Background

On March 9, 2023, Jacob Atkinson applied for a job opening with Aaron's at its store in Longview, Washington. Compl. ¶¶ 8, 14-15, 29; Ex. 1, ECF No. 1-1. He alleges that the job opening for a sales associate was posted on Aaron's website (jobs.aarons.com) and did not disclose the wage scale or salary range. *Id.* ¶¶ 14-15; Ex. 1. Mr. Atkinson filed suit against Aaron's in the King County Superior Court on October 11, 2023. *Id.* at 7. He claims to represent more than 40 potential class members who also applied for jobs with Aaron's for positions that did not disclose the wage scale or salary range. *Id.* ¶ 14. Mr. Atkinson asserts three causes of action: (1) Violation of RCW 49.58.110; (2) Injunctive Relief; and (3) Declaratory Relief. Compl. ¶¶ 27-36. He seeks statutory damages, costs, and reasonable attorneys' fees pursuant to RCW 49.58.070(1). *Id.* at 7.

Aaron's removed the case to this Court on November 13, 2023 on the basis of diversity jurisdiction, 28 U.S.C. § 1332(a). Notice of Removal, ECF No. 1. Aaron's filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Mr. Atkinson, as a job applicant, does not have a private cause of action to sue Aaron's for failure to comply with the EPOA. Mot. 1-2, ECF No. 24. Aaron's also asserts that Mr. Atkinson failed to allege the elements necessary to establish standing or state a claim. *Id.* at 2.

## III.   LEGAL STANDARD

### A. Dismissal Under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows litigants to seek the dismissal of an action for lack of subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction can either attack the sufficiency of the pleadings on their face (a "facial attack") or present affidavits

ORDER GRANTING MOTION TO DISMISS

or other evidence that contest the truth of the allegations in the pleadings (a "factual attack"). *Sullivan v. Ferguson*, 636 F. Supp. 3d 1276, 1283 (W.D. Wash. 2022) (citing *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)).

When the movant does not offer affidavits or other evidence challenging the truth of the allegations in the complaint, the Court construes the motion as a facial attack on subject matter jurisdiction. *See id.* And the Court resolves a facial jurisdictional challenge "as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

With a factual Rule 12(b)(1) attack, a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). If a factual motion is brought before the court, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction," and the court need not presume the truthfulness of the plaintiff's allegations. *Id.*

The Court presumes that a case lies outside of its "limited jurisdiction" unless the plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). If at any time the court determines that it lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

**B.  Dismissal Under Rule 12(b)(6)**

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is properly granted if the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief

ORDER GRANTING MOTION TO DISMISS

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). When considering a motion to dismiss under Rule 12(b)(6), courts must accept the factual allegations in the complaint as true and construe such allegations in the light most favorable to the plaintiff. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886-87 (9th Cir. 2018).

Typically, a court may not consider material beyond the pleadings in ruling on a Rule 12(b)(6) motion. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908. The court may consider such documents so long as their authenticity is not contested, and the complaint relies on them. *Id.*, *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). If such documents conflict with a plaintiff's allegations in the complaint, the court need not accept the allegations as true. *See Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) ("Although we normally treat all of plaintiff's factual allegations in a complaint as true, we need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." (citation omitted)).

## IV.   DISCUSSION

Aaron's contends that Mr. Atkinson's "cursory allegations are insufficient to provide standing or a factual basis for his statutory claim," noting that he filed sixteen other lawsuits based on nearly identical alleged violations. Mot. 3-4, n.1.  Aaron's first argues that Mr. Atkinson lacks standing to bring a private cause of action, adding that he fails to allege that he was a Washington resident when he applied, that he applied in good faith with the intent of gaining employment, or that he suffered any injury. *Id.* at 5-12. Aaron's also argues that Mr. Atkinson fails to plausibly allege a cause of action under RCW 49.58.110. *Id.* at 12-14.  The Court shall address each in turn.

### A.  Private cause of action for applicants

Aaron's maintains that the EPOA draws clear distinctions between employees and job applicants, and it authorizes only employees to bring a civil action for violation of the statute but does not authorize a job applicant to do so. Mot. 5. Mr. Atkinson contends that the statute plainly and unambiguously provides an applicant the right to sue for a violation of RCW 49.58.110.  Opp'n 5-7. To resolve this issue, the Court will apply the traditional principles of statutory interpretation.

When interpreting a state statute, a federal court must "determine what meaning the state's highest court would give to the law." *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 998 (9th Cir. 2017) (quoting *Bass v. Cnty. of Butte*, 458 F.3d 978, 981 (9th Cir. 2006)). Thus, the court must "follow the state's rules of statutory interpretation." *Id.* Under Washington law, the goal is to "ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Thurston Cnty. ex rel. Snaza v. City of Olympia*, 193 Wn.2d 102, 107–08 (2019) (en banc) (citation omitted). The court does not resort to legislative history unless the statute is ambiguous in that the language

ORDER GRANTING MOTION TO DISMISS

- 8

1  "remains susceptible to more than one reasonable meaning." *Dep't of Ecology v. Campbell &*

2  *Gwinn, LLC*, 146 Wn.2d 1, 12 (2002).

3      Therefore, the first step is to consider "the plain meaning of the statute." *Matter of*

4  *Dependency of E.M.*, 197 Wn.2d 492, 499 (2021) (en banc) (citing *Dep't of Ecology*, 146 Wn.2d at

5  9-10). In doing so, the court derives meaning "solely from the plain language of the statute,

6  considering the text of the provision, the context of the statute, related provisions, amendments to

7  the provision, and the statutory scheme as a whole." *First Student, Inc. v. Dep't of Revenue*, 194

8  Wn.2d 707, 710 (2019) (en banc); *see also Dep't of Ecology*, 146 Wn.2d at 10–12.

9      The remedies section of the job-posting statute provides that "[a] job applicant or an

10  employee is entitled to the remedies in RCW 49.58.060 and 49.58.070 for violations of this

11  section." RCW 49.58.110 (4). RCW 49.58.060 provides for an administrative complaint and

12  investigation by L&I, which may result in an order to pay damages to the complainant and civil

13  penalties to the Department. RCW 49.58.070 provides for a civil action to be brought against an

14  employer for damages, which has the effect of terminating the processing of an administrative

15  complaint. There is no ambiguity here. There is only one reasonable interpretation of the plain

16  text—a job applicant is entitled to the remedy of an administrative complaint provided for in RCW

17  49.58.060, and a job applicant is entitled to the remedy of filing a civil action as provided for in

18  RCW 49.58.070. Providing the same remedies to applicants and employees alike is consistent with

19  the intent of the legislature to "update the existing Washington state equal pay act . . . to reflect the

20  equal status of all workers in Washington state," which included requiring "an employer to provide

21  wage and salary information to applicants and employees."  RCW 49.58.005.

22      Aaron's contends that RCW 49.58.070 specifically states that "an employee may bring a

23  civil action against an employer for violation of RCW 49.58.020 and 49.58.030 through 49.58.050,"

24  ORDER GRANTING MOTION TO DISMISS

25    - 9

but that no provision authorizes a job applicant to bring a civil action. Mot. 5. However, RCW 49.58.110 specifically states that a "job applicant. . . is entitled to the remedies in . . . 49.58.070 for violations of this section."  Further, the Court notes that RCW 49.58.060 also specifically references only "Complaint by employee," but Aaron's does not contend that a job applicant may not bring a complaint to the director to investigate for compliance. It is not reasonable to conclude that job applicants have no remedies for a violation of RCW 49.58.110 because the two specific remedies authorized in the provision both use only the term "employee."[4]

Aaron's also argues that "the Legislature has the absolute right to provide different enforcement mechanisms for different aggrieved individuals." Reply 2 (citing cases). Certainly, that is true, but the Legislature has not done so here.  As stated by Aaron's, "the Court 'must assume that the legislature meant precisely what it said and apply the statute as written.'" Mot. 6, Reply 3 (quoting *State v. Roggenkamp*, 153 Wn.2d 614, 625 (2005)). Accordingly, the Court concludes that the statute authorizes a job applicant to bring a civil action for violation of RCW 49.58.110.

### B.  Out-of-state applicants are protected

Aaron's contends that the extraterritorial doctrine requires dismissal of this statutory cause of action because Mr. Atkinson was not a resident of Washington state when he applied for the posted position. Mot. 8-9 (citing Plaintiff's Application, Patrick Decl. Ex. A, ECF No. 26; Plaintiff's LinkedIn Profile, Fairchild Decl. Ex. D, ECF No. 25-4; Plaintiff's Website, Fairchild Decl. Ex. E, ECF No. 25-5; Plaintiff's Acupuncture License, Fairchild Decl. Ex. F, ECF No. 25-6; 2021 Service of Summons, Fairchild Decl. Ex. G, ECF No. 25-7). In response, Mr. Atkinson

---

[4] The Court notes that an employee may also be considered a job applicant in the context of applying for another position internally with an existing employer. *See, e.g.*, Admin. Policy, ES.E.1, at 4 (Nov. 30, 2022) (available at https://www.lni.wa.gov/workers-rights/_docs/ese1.pdf) ("All applicants, including existing employees, who apply to a posting recruiting Washington-based employees . . . are protected by the law.").

ORDER GRANTING MOTION TO DISMISS

- 10

declares that he has been a resident of Washington since February 2023 and intends to remain in Washington. Opp'n 8; Emery Decl. Ex 1, ECF No. 30. Mr. Atkinson also maintains that the extraterritorial doctrine does not apply, and the EPOA job-posting provision protects those out-of-state applicants who are willing to relocate to Washington or work remotely in a Washington-based position. Opp'n 7-8.

Federal statutes are generally presumed to not have extraterritorial effect, i.e., they do not have force beyond the country's borders. *See, e.g.*, *Daramola v. Oracle Am., Inc.*, 92 F.4th 833, 837 (9th Cir. 2024) ("That presumption is this: 'It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" (quoting *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 417 (2023))).  State courts also must determine the geographic scope of state statutes, but rather than apply a presumption against extraterritoriality, Washington state courts rely on ordinary principles of statutory interpretation. *See, e.g.*, *Thornell v. Seattle Serv. Bureau, Inc.*, 184 Wn.2d 793, 798-801 (2015) (holding that state consumer protection statute applies to out-of-state plaintiffs); *Bostain v. Food Exp., Inc.*, 159 Wn.2d 700, 708 (2007) (holding that state wage statute requires overtime pay for work outside the state).

Applying Washington state's rules of statutory construction, discussed above, the Court concludes that nothing in the plain text of the statute limits the application to Washington *resident* applicants or employees, although enforcement is limited against employers engaging in business in Washington state. *See* RCW 49.58.010 (defining employer as "any person, firm, corporation, partnership, business trust, legal representative, or other business entity which engages in any business, industry, profession, or activity in this state and employs one or more employees, and includes the state, any state institution, state agency, political subdivisions of the state, and any

ORDER GRANTING MOTION TO DISMISS

1   municipal corporation or quasi-municipal corporation."). Rather, as noted by the Washington

2   Supreme Court in *Burnside v. Simpson Paper Company*, "limiting the statute's application to

3   Washington inhabitants would effectively allow Washington employers to discriminate freely

4   against non-Washington inhabitants, thus undermining the fundamental purpose of the act,

5   deterring discrimination." 123 Wn.2d 93, 99 (1994).  In *Burnside*, the Washington Supreme Court

6   held that the state's employment discrimination statute applied to nonresidents working for

7   Washington companies outside the state based on the statute's purpose and a statutory declaration

8   that the law should be liberally construed. 123 Wn.2d 93, 99 (1994). Similarly, the *Bostain* court

9   ruled that the Washington Minimum Wage Act applied to overtime pay for all hours, whether the

10  hours were performed in or out of the state. 159 Wn.2d at 710-21. And the *Thornell* court,

11  considering the scope of the Consumer Protection Act, held that the statute "allows a cause of action

12  for a plaintiff residing outside Washington to sue a Washington corporate defendant for allegedly

13  deceptive acts." 184 Wn.2d at 796.

14      Further, it is not reasonable to expect that "postings," defined as "solicitation intended to

15  recruit job applicants for a specific available position, including . . . any postings done

16  electronically," RCW 49.58.110, are limited to Washington state's borders. Job applicants for

17  Washington-based positions may easily be located outside Washington state when they apply for a

18  position. And employees may reside out of state working remotely for a Washington-based

19  business.

20      Accordingly, Mr. Atkinson's failure to allege that he was a resident of Washington when he

21  applied for a position with Aaron's is not cause for dismissal.

22

23

24  ORDER GRANTING MOTION TO DISMISS

25

### C.  Standing requires more than a technical violation

"Under Article III, the Federal Judiciary is vested with the 'Power' to resolve not questions and issues but 'Cases' or 'Controversies.'" *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011). "Among other things, that limitation requires a plaintiff to have standing." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 295–96 (2022). Whether plaintiffs have Article III standing to proceed with this lawsuit implicates the Court's subject matter jurisdiction. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975) (stating that standing is jurisdictional). Even in a class action, "standing is the threshold issue . . . . If the individual plaintiff lacks standing, the court need never reach the class action issue." *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003).

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ((citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiffs bear the burden of establishing each of these elements "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice[.]" *Id.*; *accord Tingley v. Ferguson*, 47 F.4th 1055, 1066 (9th Cir. 2022); *see also Spokeo, Inc. v. Robins (Spokeo I)*, 578 U.S. 330, 338 (2016) *as revised* (May 24, 2016) ("[T]he plaintiff must clearly allege facts demonstrating each element." (citation omitted)).

At issue here is the "[f]irst and foremost" of standing's three requirements—"a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (citations omitted). Aaron's argues that Mr. Atkinson makes only bare and conclusory assertions that he lost valuable time and was

ORDER GRANTING MOTION TO DISMISS

harmed because he was unable to evaluate, negotiate, and compare pay. Mot. 11.  Aaron's also asserts that Mr. Atkinson makes no allegation that he applied for the job posting in good faith and based on his filing of 15 other class actions, "[i]t thus appears Plaintiff has been searching for job postings in order to serve as a plaintiff in multiple lawsuits, not that Plaintiff was actually searching for a job with Aaron's." *Id.* at 10 (citing Fairchild Decl. ¶ 3, ECF No. 25).

Mr. Atkinson contends that "a statutory violation is an injury, even when intangible." Opp'n 8 (citing *Patel v. Facebook Inc.*, 932 F.3d 1264, 1270-71 (9th Cir. 2019)).  It is not as simple as Mr. Atkinson asserts. To establish an injury in fact, plaintiffs must show that they suffered "an invasion of a legally protected interest." *Lujan*, 504 U.S. at 560 (citations omitted). Injury is particularized if it affects a plaintiff "in a personal and individual way." *Id.* at 560 n.1. And it is concrete if it "actually exist[s]," meaning that it is "real, and not abstract." *Spokeo I*, 578 U.S. at 340 (citations omitted). Further, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341. A plaintiff may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* "[T]he Supreme Court made clear that a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Robins v. Spokeo, Inc. (Spokeo II)*, 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting *Spokeo I*, 578 U.S. at 341). To establish a concrete injury, "the plaintiff must allege a statutory violation that caused him to suffer some harm that 'actually exist[s]' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" *Id.* (quoting *Spokeo I*, 578 U.S. at 340).

Intangible injuries, such as the omission of statutorily required information, "can nevertheless be concrete." *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 679 (9th Cir. 2021) (quoting *Spokeo I*, 578 U.S. at 340). "[A]n *intangible* injury may be concrete if it presents a material

risk of *tangible* harm or 'has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' like common law torts or certain constitutional violations." *Phillips v. United States Customs & Border Prot.*, 74 F.4th 986, 991 (9th Cir. 2023) (quoting *Spokeo I*, 578 U.S. at 340-41).  To determine whether the violation of a statute constitutes a concrete harm, the Ninth Circuit engages in a two-part inquiry. *Magadia*, 999 F.3d at 679. First, a court considers "whether the statutory provisions at issue were established to protect . . . concrete interests (as opposed to purely procedural rights)." *Id.* (citation omitted). The court then assesses "whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Id.*

The Ninth Circuit Court in *Patel* analyzed whether a violation of the statute at issue in that case presented a material risk of harm, considering both history and legislative judgment. 932 F.3d at 1270. The court used the two-step framework articulated by the Ninth Circuit in *Spokeo II*, 867 F.3d at 1113, and concluded that the statutory provisions "were established to protect an individual's 'concrete interests' in privacy, not merely procedural rights." *Id.* at 1270-71, 1274 (citation omitted). "Under the common law, an intrusion into privacy rights by itself makes a defendant subject to liability." *Id.* at 1274. The court then concluded that the alleged violation of the statutory requirements necessarily violated the plaintiffs' substantive privacy interests, which conferred Article III standing. *Id.* at 1275.

The statutory provision at issue in this case is distinctly different from those in *Patel* and similar cases related to privacy interests. The failure to provide information, unlike a privacy violation, has no obvious analogue in the history of American courts. Nevertheless, Mr. Atkinson argues that the Washington "legislature has rightfully adjudged that an employer's failure to publish this information amounts to a real, concrete injury to applicants," and he asserts that the "failure to

ORDER GRANTING MOTION TO DISMISS

- 15

provide mandated information alone creates a 'harm' sufficient to confer Article III standing on a plaintiff." Opp'n 10 (comparing the violation to violations of the Fair Debt Collections Practices Act ("FDCPA")). In the FDCPA cases, consumers alleged that they did not receive information to which they were entitled. *Id.* (citing *Beane v. RPW Legal Servs., PLLC*, 378 F. Supp. 3d 948, 956 (W.D. Wash. 2019)). In *Beane*, the court determined that by sending an initial communication to the plaintiff without disclosing that the defendants were acting as debt collectors, the defendants deprived the plaintiff of statutorily-mandated information, which created a risk that she might volunteer information to her detriment. 378 F. Supp. 3d at 956. As such, violation of the statutory provision placed her at risk of harm, which the court deemed sufficient to confer Article III standing. *Id.* at 956-57. The *Beane* court also analyzed a different provision of the statute relating to the timeliness of disclosures and determined that any violation of that provision was a "bare procedural" violation for which the plaintiff had failed to allege any cognizable harm. *Id.* at 957.

The informational interests discussed in the FDCPA cases related to a failure to include certain key information in a communication that was provided to the plaintiff, which caused the communication to be misleading, placing the plaintiff at immediate risk upon receipt.[5] Similarly in *Magadia*, the Ninth Circuit determined that the defendant's failure to disclose statutorily required information on wage documents violated a concrete interest. 999 F.3d at 679. The documents were provided to employees, and without the mandated information, the employees had no way of knowing if their wages had been calculated accurately—the harm the statute was designed to prevent. *Id.* at 679-80. The Ninth Circuit Court confirmed that the "'procedural violation of an

---

[5] The Court notes that if the plaintiff never received the communication, there would be no risk of injury. The procedural violation itself did not cause the injury, but rather, the risk of injury occurred upon the receipt of the information.

ORDER GRANTING MOTION TO DISMISS

informational entitlement does not by itself suffice to keep a claim in federal court.' The plaintiff must further allege 'at least that the information had some relevance to *her*.'" *Id.* (quoting *Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 493 (6th Cir. 2019)). In *Brintley*, the Sixth Circuit found that although a visually-impaired plaintiff had adequately alleged an ADA violation, she had not alleged a concrete injury because she failed to indicate any meaningful interest in the website information that was unavailable to her. 936 F.3d at 493-94.

So too here. A job posting that does not contain compensation information is a technical violation, but it does not harm or create a material risk of harm to any individual's concrete interest. A nominal applicant with no interest in the position will neither receive a benefit from early pay disclosure nor be harmed by the lack thereof. There is no risk of harm to someone browsing job postings with no intent to apply or with intent only to find those that have no compensation included so they can go through the motion of applying and then sue for the technical violation.[6] *See Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1172-73 (9th Cir. 2018) ("A plaintiff may not bring a generalized grievance, but rather must show a personal stake in the outcome of the controversy." (citation omitted)).

While non-disclosure of information can give rise to an injury in fact, the non-disclosure is not an injury in and of itself. There is no risk of any harm from the lack of information until a person responds to the posting seeking to apply for the position. At that point, the information has relevance to the applicants, and puts them at risk of wasting time and effort only to learn that the job doesn't pay enough. And that is precisely the harm that the Legislature seeks to protect. *See* S.B. Rep. ESSB 5761, at 3 (taking into consideration that "[m]any candidates spend hours going through rounds of

---

[6] The Court notes that any time wasted in applying for a job without good faith is actually a self-inflicted harm.

ORDER GRANTING MOTION TO DISMISS

- 17

interviews only to find out they can't live on the offered pay."). Further, the Legislature's amended wording limited the persons who are entitled to remedies from "[a]n individual" to "[a] job applicant or an employee." RCW 49.58.110.

Mr. Atkinson contends that because the EPOA is a civil rights statute, the threshold for Article III standing is lower. Opp'n 11 (citing *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)). In *Trafficante*, a discriminatory housing case, the Supreme Court interpreted statutory standing under the Fair Housing Act ("FHA") and instructed courts to take a broad view of standing in civil rights cases, especially where private enforcement suits "are the primary method of obtaining compliance with the Act." 409 U.S. at 209. The Ninth Circuit similarly instructed lower courts that plaintiffs suing under the FHA "[are] judged under a very liberal standing requirement." *Harris v. Itzhaki*, 183 F.3d 1043, 1049 (9th Cir. 1999). The Ninth Circuit recognized that the language in the ADA, similar to the FHA, allowing "any person"[7] to bring a claim for injunctive relief, indicated that "testers" and "professional plaintiffs" could have standing to sue. *See Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023), cert. denied, 144 S. Ct. 823 (2024), reh'g denied, 23-742, 2024 WL 1348980 (U.S. Apr. 1, 2024) (citing cases). Nevertheless, the plaintiff was not relieved of the requirement to allege more than a technical violation, including sufficient future injury for the injunctive relief sought, actual knowledge of the violating barrier, and an intent to return to the location once the violation was cured. *Id.* at 1095-99. While a plaintiff's motivation may be irrelevant, the civil rights cases reinforce that standing requires allegations of sufficient personal injury. The Ninth Circuit observed that it does not require a plaintiff to engage in a "futile

---

[7] Unlike the broad "any person" language in the ADA and FHA, the provision at issue here, RCW 49.58.110, does not provide for remedies to "any person" but is limited to a "job applicant" or "an employee."

ORDER GRANTING MOTION TO DISMISS

gesture," but if the technical violation itself causes harm as Mr. Atkinson contends, then applying for the posted job would be a futile gesture.  *See Langer*, 57 F.4th at 1092.

In sum, the Court concludes that a violation of the statutory provision at issue here—a job posting with no compensation information included—is a technical or procedural violation that by itself does not manifest concrete injury but requires a "bona fide"[8] applicant before there is a risk of harm. Plaintiffs must allege, at minimum, that they applied for the job with good-faith intent, and as such became personally exposed to the risk of harm caused by the violation.

Mr. Atkinson, perhaps recognizing that the allegations in his complaint are deficient, responds with a declaration that he provided in another of his lawsuits (*Atkinson v. Washington Fine Wine & Spirits, LLC*, No. 2:23-cv-01737-BJR (W.D. Wash. Jan. 19, 2024)).  Emery Decl. Ex. 1. In it, he declares that he intends to reside in Washington and is committed to finding a full-time position in Washington.  *Id.* ¶¶ 14, 21. He also declares that he was qualified for the position he applied for at Washington Fine Wine & Spirits, and he intended to seek that position. *Id.* ¶¶ 17-18. Mr. Atkinson also declares that he intends to accept a position if offered a well-paying job, and he continues to apply for open positions in Washington to supplement his income, but it is difficult to evaluate positions when so many Washington employers refuse to publish their wages for available positions. *Id.* ¶¶ 23-28. To survive a motion to dismiss, Mr. Atkinson need only allege facts, accepted as true, that give rise to a reasonable inference that he suffered an injury sufficiently concrete for the purposes of Article III. *See Spokeo II*, 867 F.3d at 1118. Mr. Atkinson's conclusory allegations in his complaint are insufficient. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ("Nor is the court required

---

[8] Latin term meaning "in good faith," made in good faith, without fraud or deceit, sincere, genuine. BONA FIDE, Black's Law Dictionary (11th ed. 2019).

ORDER GRANTING MOTION TO DISMISS

- 19

1  to accept as true allegations that are merely conclusory. . . .”). Although Mr. Atkinson may be

2  capable of amending his complaint to support standing, the Court certainly cannot consider his

3  declaration filed in another lawsuit as part of his pleading in this case. *See Broam v. Bogan*, 320

4  F.3d 1023, 1026 n.2 (9th Cir. 2003) (considering additional facts raised in plaintiff's opposition

5  papers only for purposes of determining whether to grant leave to amend); Fed. R. Civ. P. 7.

6        Ordinarily, leave to amend a complaint should be freely given unless the court determines

7  that the pleading could not possibly be cured by the allegation of other facts. Fed. R. Civ. P.

8  15(a)(2); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)

9  (“[L]eave shall be freely given when justice so requires”). This policy is to be applied with “extreme

10  liberality.” *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001).  Therefore,

11  the prudent course is to permit Mr. Atkinson to amend his complaint.

12      **D.  Failure to state a claim**

13        Aaron's contends that Mr. Atkinson has also failed to allege the necessary elements to state

14  a claim for the violation of RCW 49.58.110, specifically arguing that he fails “to allege causation

15  in fact between the alleged harm and the supposed injury he suffered.” Mot. 12. Because Mr.

16  Atkinson's Complaint is being dismissed for lack of standing, with leave to amend, the Court does

17  not address the parties' additional arguments.

18

19

20

21

22

23

24  ORDER GRANTING MOTION TO DISMISS

25  - 20

## V.       CONCLUSION

For the foregoing reasons,

1.  Defendant Aaron's, LLC's Motion to Dismiss, ECF No. 24, is GRANTED;

2.  Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE for lack of standing, with leave to amend; and

3.  Plaintiff may file an amended complaint within 15 days of the date of this Order, i.e., on or before May 15, 2024.

DATED this 30th day of April, 2024.


_____

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING MOTION TO DISMISS

- 21